GEORGIA,
Chatham Co.
Jan. 1806.

State
vs.
Noel.

*Stites and Leake*, in support of the Rule.

*Mr. Recorder, Whitfield*, against it.

*January Term*, 1806.

The State

vs.

1c   43
91   107

John Y. Noel, Mayor of the city of Savannah, and Charles Cope, Marshal of the said city.

Agreeably to a previous order, Mr. *Noel* now proceeded, in behalf of himself and the city marshal, to show cause why an attachment for contempt should not be granted against them.

*Noel*, Mayor,

Had I been required, by the order of this court, to answer the charge of a contempt committed as a private citizen, the delicacy of my situation, whether justly chargeable or not, must have deeply impressed my mind.   But when called on to answer for an act done in the honourable and highly respectable station in which I now appear, I am awed, not by an anxiety respecting my situation as an individual, but by the consideration that, on the one hand, one of the powers of the judicial department, and on the other, the dignity of office, the rights of those who are represented by the office, and of those associated with me, are deemed to be, in some measure, involved in this discussion.

GEORGIA,
Chatham Co.
JAN. 1806.

State
vs.
Noel.

With the utmost dismay and compunction should I have arisen to address this court, on the present interesting occasion, if I could, for a moment, have entertained a reflection, that, in the act for which this rule was granted, I had been actuated by impetuosity of temper, by disrespect for the judicial branch of government, or for the person who exercises its functions, or by any motive which either my own conscience, or the judgment of my worthy colleagues had disapproved. Supported by their united sanctions in all these respects, I am enabled, with confidence, to explain the reason of my conduct, and cheerfully to submit them to the impartial decision of this honourable court.

In the case of *Walter Roe*, from which this proceeding emanated, the first judicial order was in the following words :—

*Chambers, Savannah*, 21*st Aug.* 1805.

On the affidavit and petition of *Walter Roe* for a certiorari to remove the proceedings of the city council of Savannah, on an information and fine on said *Walter Roe*, for a breach of the quarantine law, it is ordered that the proceedings of the said court and their officers in the premises, be suspended until argument is had on the said application, before me, on Friday next, at 12 o'clock ; that the recorder have notice to attend, and that the said *Walter Roe*, give forthwith security for the payment of said fine of fifty dollars, to the city of Savannah, in case the said application for a certiorari be refused.

On the twenty-second, *Walter Roe* was brought before me by the city marshal, in pursuance of the process in his hands, when the following order was made :

" The city marshal brought before the mayor, *Walter Roe*, whom he had arrested under a writ in nature of an execution against the property and person of the said *Walter Roe*, for a fine inflicted under the quarantine law of this state. The marshal, at the same time, laid before the mayor a certified

copy of the order made by his honour, Judge *Jones*, directing that the proceedings of the city council be suspended until Friday next. Whereupon it is ordered, that the city marshal take a bond with security from the said *Walter Roe*, for his appearance personally before the city council, on Monday next. The mayor entertaining doubts as to the power of the judge to make an order for suspending the proceedings of the corporation, considers it his duty to make this order to the marshal, that the corporation may have an opportunity of deciding, whether they consider their proceedings subject to be suspended by a judge of the Superior Court or not."

GEORGIA,
Chatham Co.
Jan. 1806.

State
vs.
Noel.

The ground upon which I made the order cannot be mistaken. It is clearly and explicitly stated, viz. that I doubted the power of a judge of the Superior Court, by the order of the 22d instant, to inhibit or suspend the proceedings of the corporation and its officers, for enforcing the sentence of the said *Walter Roe*.

The reasons by which our opinions were formed, that this court has not jurisdiction, and that the order was illegal, and not operative upon the corporation, must necessarily constitute the basis of my justification.

It is my purpose to express the sentiments by which my conduct has been governed, with great respect and deference, hoping for the patient and unbiassed attention of this honourable court, to the expression of these sentiments, and to the arguments which will be adduced in support of them.

The arrangements of this discussion will be,

1. That the judicial order was irregular, and irregularly acted.

2. That the judge had not jurisdiction to make this order.

3. That the judge of the Superior Court has not jurisdiction to issue the writ applied for, and to which this order was preparatory.

1. It appeared to me that the order was irregular, and that if regular and legal in itself, yet it was so irregularly acted as to defeat the purpose for which it was intended.

GEORGIA,
Chatham Co.
JAN. 1806.

State
vs.
Noel.

The order was irregularly made, not being founded on any evidence, being made *ex parte*, and without notice.

It does not appear, nor is it contended, that a transcript of the proceedings or conviction was produced when the application was made. It is stated that the applicant's petition was accompanied by his own affidavit; but no other evidence is set forth as forming the basis of that order.

Courts of law will not, *even for a moment*, stop the progress of *final process* issued for the purpose of effectuating their own judgments, but upon good cause of exception; much less will they interfere with process issuing from inferior jurisdictions, over whom they have control, unless special reasons be assigned and substantiated in the first instance. If then the corporation is considered as an inferior judicial tribunal, and if its summary convictions are subject to be controlled and reviewed; yet upon principles of law, this court will not inhibit or stay the proceedings by which those convictions are enforced, unless some exception shall be made apparent.

The order was irregularly acted on, because it was not served on the presiding magistrate of the corporation. The order, if legal in itself, could not have its effect by any other means than service upon the mayor; upon him alone, as head of that body, could it act imperatively. The city marshal is a ministerial officer of the corporation, and is subject to their mandate alone. The marshal is an officer appointed by the corporation, for the execution of certain functions and duties defined by their ordinances; being the mere agent and servant of the corporation, he can act only by their authority and through them, and therefore is answerable to them only; unless in the exercise of the office he should do an act illegal in itself, in which case he would be made answerable to the person injured in a civil action. Or in the instance which occurred, (in the case of *Walter Roe*,) having arrested the body of the defendant, and holding him in custody, he was bound to obey the writ of *habeas corpus*, as any

other person holding the body of the prisoner in confine- ment, would be bound. But as an officer of this city, the marshal is not subject to the mandate or process of any other body or power except the corporation.

The recorder is also an officer created by the corporation for the execution of particular duties. He possesses no powers either of a judicial or executive nature, being mere- ly the advocate and counsellor of that body. His province is, to advise when consulted by the mayor or corporation, but he possesses no authority to adjudicate or order in the recess or vacation of council.

The mayor is the head or source of efficient power, and is therefore the only person upon whom that order (if legal) could operate imperatively.

If the order for a stay of proceedings upon this conviction was not immediately imperative upon the marshal, it neces- sarily results that the rule to show cause why an attachment should not issue against him, must be discharged.

It remains to be considered whether the mayor is charge- able with a contempt, under this order, for a stay of pro- ceedings.

The universal and indispensable basis of an attachment for contempt, in the disobedience of a judicial order is, that the person charged was personally served with *a copy of the order*, which he was bound to obey, and that *the original was produced and shown to him*. The ordinary practice of our courts, as to proceedings by attachment for contempts, ma- nifests the correctness of this position. But in order to ap- ply it more immediately to the case now before this court, I shall cite the corporation cases, in which the practical rule which I have stated, was recognised and held indispensable. The King *vs.* Smith, 3 Term Rep. 351, upon a rule to show cause why an attachment should not issue for not obeying the rule of the court, which required the defendant to give inspection of some corporation books, Mr. *Bearcroft* showed cause, by objecting that the affidavit did not state that the defendant had been served with a copy of the rule person-

GEORGIA,
Chatham Co.
Jan. 1806.

State
vs.
Noel.

ally, and the original rule at the same time shown to him, and the court being of opinion that this was absolutely necessary, were about to discharge the rule ; but it being suggested that the defendant had been regularly served with the rule, the court gave the prosecutor an opportunity of making an additional affidavit as to the fact.

3 T. Rep. 352.

In the case of the King *vs.* Edgveau et al. ibid, 352, a *mandamus* had issued to certain officers of a corporation, requiring them to proceed to the election of a mayor, in pursuance of a particular statute. For disobeying the *mandamus*, a rule to show why an attachment should not issue, was obtained. Upon showing cause, the objection was the same as in the preceding case. Lord Kenyon, C. J., delivering the opinion of the court said, " Although in general, personal notice is necessary before a party is brought into contempt, yet in this case, the act of parliament seems to have dispensed with it. That statute which was made to prevent the dissolution of corporations which neglect to choose the mayor of the charter day, enables the court to grant a *mandamus* to compel them to proceed to an election, and it directs that public notice be given. The public notice directed by the act is sufficient *prima facie* to call upon the members of the corporation. Rule absolute."

By this adjudication, founded upon the exception made by the statute, the general rule is acknowledged, and the inference is, that without special provision of the statute, personal service would have been deemed indispensable.

It may be objected, that knowledge of the original order is admitted by my order made on the arrest of *Walter Roe.* This knowledge was indirect, and therefore ineffectual. The command to desist could only be addressed to the presiding magistrate. From him alone could obedience to the command be expected ; and not having been communicated to him, he could not obey it. 'Tis the service alone which constitutes inhibition, as I shall show by some authorities to be cited in support of the second position.

The *second* point of justification which I have stated and

shall attempt to illustrate is, that the judge had not jurisdiction to make this order.

GEORGIA,
Chatham Co.
JAN. 1806.

State
vs.
Noel.

I deem it unnecessary and improper to occupy the time of the court, by an historical detail of the rise and progress of civil corporations ; suffice it to remark, that in all the populous and commercial cities of Great Britain, they have existed and have been found essentially useful for their internal government during ages past.

That similar institutions were organized in the cities and towns of America, under the provincial governments, established by the crown, and that since the revolution they have been adopted by legislative acts, throughout the United States, upon the same principles, with such modifications only as were requisite to reconcile them to the genius of our governments and the principles of our constitution.

On casting our eyes over the pages of our common law, as handed down to us by Littleton and Coke, and illustrated by Wood, Blackstone, and Modeson, we find that civil corporations, with their incidental powers for the immediate government of cities are permanent features of that illustrious system. Lord Hobart, in a case reported by himself, Hobart, p. 211, says, he holds the power to make by-laws given in corporation patents, *as needless,* that power being included by law in the corporating act. The legislature of this state have thought it expedient, at a very early period of our present government, to originate a corporate institution for the police of this city, upon principles similar to those recognized by the common law ; acting under powers thus derived from the legislature, the presiding magistrate of the corporation appears before this court, in obedience to the rule which has been served upon him ; and, before entering into a particular investigation of the point stated, he takes the liberty of asking, from what source arises the importance and duration of corporations ?

Hob. 211.

If, from their great utility, founded in the experience of monarchial and republican governments, he deems it not inapplicable to the present discussion, to state very briefly, in

7

GEORGIA,
Chatham Co.
JAN. 1806.

State
vs.
Noel.

what their utility consists ; it is in their being enabled, by the combined powers delegated to them, to enact and enforce ordinances, for protecting the property, lives, and health of their fellow citizens, upon emergencies, and in cases against which neither the ordinary course of legislative, executive, nor judicial procedure can provide or effectuate remedies. In populous cities, and more especially those attached to seaports, the sources of danger both internal and external, are various and frequent. It is, therefore, essential to the utility of corporations, that they act in their various functions without control, so long as they continue within the pale of the constitution and within the limits of their jurisdiction, as defined and prescribed by law.

It is not denied that this court, as a court of superior judicial power, has a controlling authority over the corporation to a certain extent, and for the purpose of restraining them when they attempt to exceed their jurisdiction ; but, I shall maintain this point, and show the invalidity of the judicial order by the statement of a single proposition, which is undeniable, and, to every lawyer, SELF EVIDENT, viz : That a Superior Court cannot stay the proceedings of an Inferior Judicatory in any other manner than by some appropriate judicial process, which has inherently, and by operation of law, the incidental effect of superceding or staying proceedings.

This stay of proceedings in the inferior tribunal, is not an act or order of the court, which may or may not be exercised at discretion.

It is a coincident effect of a writ legally issued by a Superior Court, for the purpose of removing and reviewing the proceedings of an Inferior Court, in some particular case.

If then, the corporation is to be considered as an Inferior Judicial Tribunal or a Court of Record, (which I shall disprove in discussing the third point) yet, as a judicial tribunal, it would not legally be subject to a stay of proceedings by a mere order of a Superior Court.

To illustrate the position and apply it more closely to the relation which is contended for as subsisting between this

honourable court and the corporation, viz : That of Superior and Inferior Courts, I will cite a few authorities. The writ of *certiorari* operates as a *virtual supersedeas*, from the service of the writ upon the judge or justice to whom it is directed, and not before. The general rule on this subject, is clearly laid down in 2 Viner, 361. " If *certiorari* goes to remove a record, the judge below is not in contempt for proceeding on the record till service of the writ ; but all proceedings upon it after the *certiorari* tested, are void." Ibid.

Upon motion for attachment, for proceeding by distress under an order of justices, for levying of money for repairing a bridge, after the order was removed by *certiorari*, per Holt, C. J., to bring one in contempt, the *distress must be after the certiorari presented below ;* and if the warrant were delivered before that time, the way had been, upon producing the *certiorari* to get a *supersedeas* of it and deliver it to the officer, or else he cannot be in contempt. This case not only supports the doctrine for which I am now contending. but also confirms the ground upon which I have defended the marshal. It shows that he was bound to proceed in execution of the process, until ordered to desist by the mayor. That *for his not desisting, the mayor* would have been answerable, after service of *certiorari*. 2 Com. Dig 196. " If a *certiorari* be-delivered to a justice, *to whom it is directed,* it shall be a *supersedeas,* and every proceeding afterward is a contempt. When a *certiorari* is granted, the justices ought to award a *supersedeas* to the sheriff *ex officio.* 1 Bacon Abridg. 574 After the certiorari delivered, if the inferior court proceeds, where by law it ought not, it is a contempt, for which the court will grant an attachment."

The certiorari is a prerogative writ, the granting of which is matter of discretion. 3 Blk. Com. 132. " Writs of *certiorari, prohibition, mandamus,* and other prerogative writs, do not issue as of mere course, without some probable cause why the extraordinary power of the crown is called in to the party's assistance." Until a necessity is ascertained to exist,

GEORGIA,
Chatham Co.
JAN. 1806.

state
vs.
No 1.

2 Viner, 361.

2 Com. Dig.
196.

1 Bacon, Ab.
574.

3 Blk. Com.
132.

GEORGIA,
Chatham Co.
JAN. 1806.

State
vs.
Noel.

for the interposition of this high-toned remedy, it is never granted. To this principle is adapted the *certiorari* for removing causes in certain cases from the inferior to the Superior Courts, by the judicial system of this state. "Upon exceptions made by either party, to any proceedings in any cause, *in any inferior court*, affecting the real merit of such cause, he may apply to a judge of the Superior Court, and if such judge shall deem the said exceptions to be sufficient, he shall forthwith issue a writ of *certiorari*, &c.' And the said Superior Court shall determine thereon, and order the proceedings to be dismissed, or return the same to the said inferior court, with order to proceed in the same cause."

Notwithstanding the generality of the expression, *in an inferior court*, I shall not undertake, nor do I deem it necessary, to express any opinion whether the rule thus laid down is intended to govern all cases of *certiorari*. The rule is precisely assimilated to those general principles, which govern in cases of *certiorari*.

The conclusions from those authorities which I have cited in support of my second position, appear to be, that the allowance of the writ is the only criterion and the only means by which it can be adjudged in a Superior Court, that the proceedings of an inferior court shall be stayed or superseded, and that until the presiding magistrate shall be served with this writ, it cannot operate as a *supersedeas*, so as to charge him with a contempt.

My third ground of justification, for not having immediately ordered a stay of proceedings is, that I considered the Superior Court as not having jurisdiction to grant the writ, to which the order of the judge was preparatory. Being aware that this point has in some measure been decided by the allowance of a *certiorari*, I am, notwithstanding, constrained to ask the liberal attention of the court, for the purpose of farther evincing the reasons and impressions by which I have been guided, and by which I presume *this honourable body who accompany me*, have been governed in approving my conduct. These remarks will be made with the highest respect and de-

ference for the court, and with due submission to the adjudication which has taken place.

The conviction of *Walter Roe*, whence this procedure originated, was founded on an act of the legislature, passed 10th December, 1803, by which the corporation is empowered to impose a fine not exceeding fifty dollars, upon any person arriving in the port of Savannah, who shall violate the quarantine law of December, 17th, 1793.

As I have already stated in a preceding part of this defence, it is not denied that the Superior Court has a controlling power over the corporation, but the exercise of this power, we say, is confined to those cases in which there is a want or transgression of jurisdiction apparent on the proceeding. And we contend, that where there is jurisdiction manifested upon the face of the proceedings, no other objection against them can give appellate jurisdiction to the Superior Court.

Upon referring back to the order of this court, dated August 21st, we shall find that it is stated to have been made on the petition and affidavit of *Walter Roe*, praying for a certiorari, to remove the proceedings of the city council, on an information and fine for a breach of the quarantine law. This statement on which the order is founded, does in itself display our title to jurisdiction. It shows on the face of it, that this summary conviction was made under the express sanction of the legislative act, which I have cited. It is not deficient in any one particular for this purpose, except the sum or amount of the fine ; this, I presume, is stated in the *petition or affidavit, copies of which were never served upon me.*

Strictly speaking, a *certiorari* is not the process by which proceedings of a corporation are to be controlled in a Superior Court. The writ of prohibition is the proper process for that purpose. 1 Bacon, 559. " A *certiorari* is an original writ issuing out of chancery or the King's Bench, to the judges or officers of inferior courts, commanding them to return the records of a cause depending before them, to the

GEORGIA,
Chatham Co.
JAN. 1806.

State
vs.
Noel.

Act 10th Dec,
1803.

1 Bacon, 559.

GEORGIA,
Chatham Co.
JAN. 1806.

State
vs.
Noel.

1 Salk. 263.

end the party may have more sure and speedy justice."*
*Certiorari* lies to a court of record where a writ of error
will not lie, that is in cases where a court of record, of in-
ferior jurisdiction, proceeds in a summary way, and not ac-
cording to the course of common law.   The doctrine relied
on, to prove that Superior Courts have power to review
convictions by the corporation, is sufficiently stated in 1
Salkeld, 263. Gronvelt *vs.* Burrell, where it is held by Holt,
C. J. " that wherever a new jurisdiction is erected by act of
parliament, and the court or judge that exercises this juris-
diction, acts as court or judge of record, according to the
course of common law, a writ of error lies on their judg-
ments ; but where they act in a summary method, or in a
new course different from the common law, there a writ of
error lies not, but a *certiorari*."   This doctrine remains
unimpeached, but has no sort of applicability to corpora-
tions.   This corporation is instituted upon common law prin-
ciples, and its power, as briefly defined by the act, are those
incident to them by the common law.   It is therefore nei-
ther a new jurisdiction created by statute for a special pur-
pose, nor is it a court of record.   It has the power of en-
forcing its ordinances by fine, but not by imprisonment.  But
it is neither essential nor even material in the present in-
vestigation, to ascertain whether in point of form, or as to
the mode of process, a *certiorari* may or may not be used,
instead of a prohibition ; it has been used in some instances.
The effect must necessarily be the same, the appellate juris-
diction, being confined to this single question, *Whether the
corporation has exceeded the limits of its jurisdiction or not?*
The process for removing into this court and suspending
proceedings of this body, in which I have the honour to pre-
side, is not *ex gratia, but a matter of sound legal discretion,
upon an examination of those proceedings:* This is the only
legal rule of procedure, whether the mode of removal be
by *certiorari* or prohibition.   And, if upon an examination of
those proceedings, it appears obviously that the corporation
had jurisdiction, the inference is, that the Superior Court

GEORGIA,
Chatham Co.
JAN. 1806.

State
vs.
Noel.

has not jurisdiction.   Vain and futile indeed would be the power delegated to them for enforcing obedience to local ordinances, and laws enacted for the immediate preservation of lives and health, if their sentences were subject to be reviewed as to the testimony and facts upon which such sentences may have been founded.   Under such circumstances, the corporate institution would become a mere thing of nothing, a rope of sand.   Before I proceed to cite authorities in support of this proposition, as to the controlling power of the Superior Court, it will be proper to anticipate an argument which will be drawn from precedents of *certiorari* heretofore issued from this court, to remove proceedings of the corporation in this city.   It is certainly true that in general, adjudications in courts of law, operate as authorities to settle a rule or principle of law, and must govern the decision of all subsequent cases, to which they apply.   But it is an axiom, as certain and invariable, that precedents will not give or create jurisdiction, in repugnance to ᵗprinciples of law.   The instances which occurred in this court, so far as I have obtained information of them, have been very few ; and of those few instances none have been carried to a final decision, except the case of Hicks *qui tam vs.* Cuddy.   That was a conviction under the slave acts, for dealing with negroes ; the sentence was reversed, because, by it, a fine of ten pounds had been imposed, and by an act subsequent to the revolution, the jurisdiction of magistrates was limited to five pounds.   Here the justices manifestly exceeded the boundary fixed by law, and the judgment was reversed, for sufficient cause apparent on the record.   In South Carolina, the case of Zeylstra *vs.* The Corporation of Charleston, arose upon a motion for a prohibition.   It appeared that the court of Wardens had given judgment against Zeylstra for one hundred pounds, though the jurisdiction of that court was expressly limited to twenty pounds.   Here the limitation of jurisdiction had been exceeded, and for this cause a prohibition was granted.

GEORGIA,
Chatham Co.
JAN. 1806.

State
vs.
Noel.

King vs. More-
ly. 2 Bur. 1040.

To prove that a certiorari does not lie to review the merits, but merely to ascertain whether the subordinate limited jurisdiction has exceeded its jurisdiction, I shall cite, in the first place, the case of the King vs. Morely, 2 Burr. 1040, which was a conviction of a Methodist preacher, upon the conventicle act, 22 Charles 2. c. 1. The objection was, that " it was alleged that the defendants were subjects of this realm, which is an essential requisite. The court were unanimously of opinion that a certiorari ought to issue. *A certiorari does not go to try the merits of the question*, but to see whether the *limited* jurisdiction have *exceeded* their bounds. The jurisdiction of this court is *not taken away*, unless there be express words to take it away ; this is a point settled. Therefore a *certiorari* ought to issue, and after a return shall be made to it, you will be at liberty, and it will be still open to you, to move to supersede it, if there should appear reason for the court's so doing."

Rule made absolute for a *certiorari.*

In all cases of special limited jurisdiction, so much must be set forth on the record as will show the jurisdiction. Jurisdiction cannot be presumed, where the authority is limited or special. In the case last cited, there was a deficiency of jurisdiction apparent on the record.

King vs. Whit-
bread. Dougl.
530.

The King *vs.* Whitbread, Douglass Rep. 530. This case came before the court, on a rule to show cause why a *certiorari* should not issue, to remove a conviction by the commissioners of excise. Two objections were made ; 1st. That the power of granting a certiorari was expressly taken away by the statute which authorized this conviction. 2d. That a *certiorari* will not be granted to review the facts. Lord *Mansfield* said, " We are all of opinion that in this case a certiorari does not lie ; but if it did, it must be granted upon cause shown, and as the affidavits in support of the present application do *not proceed upon any alleged want of jurisdiction, but contain objections to the conviction on the merits, the court would not grant the certiorari,* if they had power to do

it, for those objections are more properly the subject matter of appeal, and the defendant has not chosen to resort to that remedy."

GEORGIA,
Chatham Co.
JAN. 1806.

State
vs.
Noel.

To obviate the force of this adjudication, it may be answered, that in the case cited there was another mode of redress by appeal, which does not exist under our judicial system. To such an argument the correct reply is obvious. An inconvenience arising from defects in a judicial system can only be removed by the legislature, and it is not competent to any court of law to extend its jurisdiction, for reasons drawn *merely by inconvenienti.*

I shall cite another case which recognises and confirms the doctrine laid down in the King *vs.* Whitbread.

The King *vs.* Abbot, Doug. 534. This was a conviction by two justices upon a statute of 11 Geo. 1, for harbouring tea and spirits. On a rule to show cause why a *certiorari* should not issue, Mr. *Wallace* showed cause, and contended, 1st, that as the affidavit on which the rule was obtained went only to the merits, denying the truth of the charge, the court, if they had the power of granting a *certiorari*, would not do it, *an enquiry into the merits not being competent to the court.* Lord *Mansfield.*—" The second objection is, that if there were a power in the court to grant it, in their discretion, *they ought not to do it* upon the present occasion, *because the question is upon the merits, and not to the jurisdiction.* The motion has been made, not on an objection to the jurisdiction, but to the merits, and in Rex *vs.* Whitbread, the court thought that would have been sufficient reason for not granting a *certiorari* if it had not been otherwise competent. We all adhere to that opinion." Rule discharged.

King vs. Abbot.<br>Doug. 534.

By the authorities, it appears to me, that the impression under which I acted, in the first instance, with regard to the controlling power of the superior courts, is positively sanctioned. That the only ground for the exercise of that controlling is *want or transgression of jurisdiction, indicated upon the face of the proceedings.* To prove the justice of my impression, and of the sentiments entertained by

8

GEORGIA,
Chatham Co.
Jan. 1806.

State
vs.
Noel.

my colleagues, on this question, it is only necessary, in a few words, to test the case of *Roe*, by those adjudications. The conviction passed for inflicting a fine of fifty dollars, under the express authority and duty prescribed by a legislative act. The questions, what facts were adduced in evidence against the delinquent, and what were the legal inferences by our body from those facts, are beyond the reach of any controlling or appellate tribunal; whether Mr. *Roe*, or the vessel in which he had arrived, came from a port infected with a contagious disease or not; whether the port of Jamaica was actually infected with a contagious disease, or whether only suspected to be infected, were facts exclusively to be decided by this body, to whom alone the legislature had committed the power of adjudicating upon them in cases when we might elect to adopt the summary mode of procedure, pointed out by the act.

If questions of this nature, under laws calculated and intended for immediate coercive protection, are to be arrested by an appellate tribunal, in their progress and upon their merits, where is the benefit of a corporation, or of any summary tribunal? Perhaps no instance could have intervened by which the justice and propriety of the doctrine which I have undertaken to prove, and of the right we contend for, could have been so strongly exemplified, as this case of a conviction under the quarantine laws. The legislature had ascertained from experience, that the deliberate mode of prosecution, provided by the original act of 1793, was not adequate in its coercion to the important mischief. They therefore by the act on which this conviction was founded, authorised the corporation to impose a fine in a summary way, for violations committed within this port, or any of the inlets north of Ossabaw. If it had appeared either by the proceedings, or affidavit of the offender, that the offence was committed beyond those local limits, the want of jurisdiction in the corporation would have afforded ground for prohibition.

I cannot take leave of the present discussion without mak-

ing a remark and producing an authority to evince the futility of one objection against *Roe's* conviction, made by the attorney, who applied for this *certiorari;* " that the law is unconstitutional, because the person accused is entitled to a trial by jury." I do not bring this objection into view for the purpose of investigating the constitutionality of that act, or the power of a judicial tribunal, to decide whether it be constitutional or not. It is my purpose to prove, that, upon this occasion, or upon an application for a *certiorari*, or any other summary appellate proceeding,—no such question can be decided. That, on the contrary, the validity of any law or ordinance by which an accused person may be convicted by this corporation, can only be tested by a regular legal remedy, according to the usual course of procedure in an action at law. It is a well settled principle, that the *validity of a by-law cannot be questioned upon the return of a process, or in any summary way*. If so, it follows *à fortiori*, that the legal or constitutional validity of a legislative act, by which a special authority is delegated to a corporation, cannot be decided on in any summary way, 2 Burr. p. 775. Ballard *vs.* Bennett, on showing cause against a motion for a *procedendo* to the mayor and aldermen of the city of Worcester.

*Lord Mansfield.* " This is an action upon a by-law, and comes removed from a corporation in the country, upon the return of a *habeas corpus ;* and the whole question at present, is, whether the court can enter into the consideration of the validity of the by-law upon the return ? There is a settled course and form of proceedings in cases of this nature, of which there are many thousand instances ; and yet, though there be such numbers of instances of this kind, there is not a single one where the court has ever determined the validity of a by-law on the return, excepting in London. The validity of this by-law is not to be disputed upon the return, but in the ordinary course of proceeding in the like cases, viz : by the plaintiff's declaring here, and the defendant's demurring to it, if he thinks proper. It never has been done in this summary way upon the return, nor ever attempted or

GEORGIA,
Chatham Co.
JAN. 1806.

State
vs.
Noel.

Ballard
vs.
Bennett.
2 Burr. Rep.
775.

GEORGIA,
Chatham Co.
JAN. 1806.

State
vs.
Noel.

thought before, and therefore we ought not to do it now. The proper course is settled : it must be by declaring here ; and the defendant may demur if he has any objection to the by-law." Mr. J. Dennision was of the same opinion, and said, " this was an attempt to get at the opinion of the court extra-judicially." Mr. Justice Paster said, " let the plaintiff declare here." Mr. J. Wilmot said, " he had searched very diligently, and could find no instance (except in London) where the court had entered into a question upon the validity of a by-law, on the return ; therefore he was clear that the court were not authorised so to do."

It may be asked, Wherein consists the great certainty of a legal decision upon any question of this nature by formality of procedure, than under the return of a summary process? It consists of that gradation of courts which forms one of the most precious and invaluable features of British jurisprudence. A principle which effectually secures the rights of persons and of property against illegal or erroneous adjudications. There, if the validity of a by-law is denied, instead of being decided summarily by a single judge, however brilliant his talents and profound his legal knowledge, it is made the subject of an action at law, either by declaration or plea ; and an issue of law is formed upon it, by filing a general demurrer. Upon the judgment given, a writ of error lies to the next superior tribunal, and thence it may be carried to the house of lords. In this state, under our judicial system, we have no court of errors, but we have an appellate jurisdiction in the last resort, our special jury. By adopting British principles in subordination to our own law, the courts are bound to refer all matter respecting the merits, as well in point of law, as fact, to a jury. There is, in our proceedings, a petition, process, and answer. But no pleading beyond these can go upon the record ; and these, says the act, must be submitted to a jury for their verdict.

I have thus stated to the court in as perspicuous a manner as I was able, the reason why I considered the judicial order as irregular, and why, upon the proceedings had under it, the

presiding magistrate of this city is not chargeable with a contempt. I have, also, endeavoured to explain and elucidate, by authorities, the ground of the impression hitherto entertained, and still remaining upon the minds of the corporation, that this honourable court hath not jurisdiction to review or suspend their proceedings in the case of *Walter Roe.*

GEORGIA,
Chatham Co.
JAN. 1806.

State
vs.
Noel.

The arguments and authorities thus adduced are the result of my best judgment and investigation, upon the questions to which they relate. And although it must be admitted, that, after the researches and progressive attainments of more than twenty-five years in the science of jurisprudence, many errors may remain hidden under the veil of professional confidence and incorrect experience; at the same time it is hoped and expected, that the arguments which have been used will be developed with candor and liberality, and that their denunciation as erroneous, will be the effect of *impartial and dispassionate judgment.* Happily we live under governments of laws and not of men ; a government in which difference of opinions does not constitute a crime, provided opinions are not expressed or entertained with motives or intentions hostile to the constitution and laws, or to legitimate authority. Of such motives or intentions, I believe it unnecessary for me to declare a disavowal, either for myself or my brethren in office. Our attachment to the government is manifested by our general deportment, and more especially by our continual services, in the corporate office.

Conscious that the magnitude of the questions, to be decided by a single judge, will be duly weighed, we leave the matter with the court, in full confidence that the constitution and law of the land will be the only rule of decision, and will ultimately prevail.

By *Jones,* Judge.

This is a motion for an attachment against *John Y. Noel,* mayor, for a contempt in directing the city marshal, by an order of the said *John Y. Noel,* to take a bond and security from one *Walter Roe,* for his appearance personally before

GEORGIA,
Chatham Co.
JAN. 1806.

State
vs.
Noel.

the city council; by which warrant the said *Walter Roe* was again arrested, after the proceedings of the city council against the said *Walter Roe*, for a fine inflicted on him under the quarantine law of this state, by the said judge of the Superior Courts; and also, for an attachment against *Charles Cope*, city marshal, for a rule to show cause why an attachment should not issue against him for a contempt in arresting one *Walter Roe*, by order of *John Y. Noel*, Esq. mayor of the city of Savannah, after the proceedings of the city council, against the said *Walter Roe*, for a fine inflicted on him under the quarantine law of this state had been stayed or suspended by the said judge of the Superior Courts. The fact appeared from the records, and were confessed by the defendants, but it was contended that the order of the Superior Court was irregular, it should have been served on the mayor, not on the recorder; that the Superior Court had not jurisdiction of the case; that a Superior Court cannot stay proceedings of an inferior court, but by some judicial writ; and that the corporation is not a court of record.

These points have all been considered and decided by the court in the case of *Walter Roe* against the Mayor and Aldermen of Savannah on the application for a certiorari, therefore the only question to be now considered is, whether the order of the mayor and the proceedings of the marshal thereon be a contempt in either or both of them. In enumerating the contempts that are punishable by attachment, Blackstone in the 4th vol. of his Commentaries, p. 285, recites, "These committed by any other person under the degree of a peer, and even by peers themselves, when enormous and accompanied with violence, such as forcible rescues and the like; or when they import a disobedience to the king's great prerogative, writs of prohibition, habeas corpus, and the rest; some of these contempts may arise in the face of the court, as by rude or contemptuous behaviour, by obstinacy, perverseness, or prevarication, by breach of the peace or any wilful disturbance whatsoever; others in the absence of the party; as by *disobeying* or *treating* with *disrespect* the king's writ, or the

4 Blk. Com. p. 285.

rules or process of the court, by perverting such writ or process to the purposes of private malice, extortion, or injustice, by speaking or writing contemptuously of the court; or judges, acting in their judicial capacity, by printing false accounts, or untrue ones, without proper permission, of causes then depending in judgment, and by any thing, in short, that demonstrates a gross want of that regard and respect, which when once courts of justice are deprived of, their authority, so necessary for the good order of the kingdom, is entirely lost among the people." And in 2 Hawkins' Pleas of the Crown, 426. Sect. 28. "There is no doubt," says he, "but that justices of the peace, or commissioners of the sewers may be punished for proceeding in a matter before them, after a certiorari delivered to them, or the judge of a spiritual or civil law court, for proceeding in a cause, after notice of a *rule to shew cause why a prohibition* should not issue." Sect. 29. "Also justices of the peace may be punished in the manner above mentioned, for acting in a contemptuous manner against the determination of the courts of king's bench." Sect. 33. "For disobeying other writs wherein the king's prerogative *or the liberty of the subject* are nearly concerned." And after reciting cases in which attachments will lie against peers, he says, "However it is certain that all other persons are liable to an attachment for contempt, all the particular instances whereof, it would be useless to enumerate."

The most remarkable instances of contempts seem reducible to the following heads, 1st. Contempt for the king's writs; 2d. Contempts in the face of the court. 3d. Contemptuous words, or writings concerning the court. 4th. Contempt of the *rules* or awards of the courts. 5th. Abuses of the process of the court. 6th. Forgeries of writs, and other deceits of the like kind tending to impose on the court."

As to the objection, that the mayor had not personal service of the order; it appears that a copy of the rule or order was regularly served on the recorder, who appeared before the court in obedience to the same rule or order, and this is all the notice necessary in conformity with the prac-

GEORGIA,
Chatham Co.
Jan. 1806.

State
vs.
Noel.

Hawk. Pleas
of the Crown,
p. 426. Sec. 28.

Ibid. Sect. 29.

Ibid. Sect. 33.

GEORGIA,
Chatham Co.
JAN. 1806.

State
vs.
Noel.

tice of the courts for many years past. But the rule or order in the case of *Roe* was also served on the marshal, who held the execution issued by the clerk of the city council against the said *Walter Roe*, and it appears by the order of the mayor that the rule or order of the judge of the Superior Court was delivered to the said mayor by the said marshal. The order of the said *John Y. Noel*, mayor, directing the marshal to take a bond with security from the said *Walter Roe*, in contravention of the order of the judge of the Superior Court, laid before the said mayor by the said marshal, is a disobedience of the order of the said judge ; and that part of the said order which expresses doubts as to the power of the judge to make an order for suspending the proceedings of the corporation, and referring it to the corporation to decide whether their proceedings should be subject to be suspended by a judge of the Superior Court or not, is treating with disrespect the said rule or order of the judge of the Superior Courts. This is the second instance in which the proceedings of the Superior Courts have been arrested and suspended by the said *John Y. Noel*, mayor, and in the first case to the great interruption of public justice. And if the mayor of the city of Savannah were permitted to question the validity of the proceedings and powers of the Superior Court, and disobey its rules or orders, every inferior officer in the government would have an equal claim to do so ; and the Superior Court would cease to deserve that name. Upon the whole, I am, after mature consideration, of opinion, that the said order of the said *John Y. Noel* amounts to a contempt, and the said *Charles Cope*, marshal of the city of Savannah, having, on the 21st of August last past, received a bond with security from *Walter Roe*, in obedience to the rule or order of the judge of the Superior Courts for his appearance before the said judge on the 23d of the same month, and having on the day following the date of the said rule or order, that is to say, on the 22d of the same month, arrested and detained in his custody the body of the said *Walter Roe*, in disobedience of the rule or order of the said judge, notwith-

standing he had the bond with security from the said *Walter Roe* for his appearance as aforesaid, is also guilty of a contempt. It is therefore ordered by the court, that the rule be made absolute.

GEORGIA,
Chatham Co.
JAN. 1806.

State
vs.
Noel.

And the parties being present, the sentence imposed upon the said parties by the court, for their contempts in disobeying the order of this court, is as follows : That the said *John Y. Noel* do pay a fine of fifty dollars, and that the said *Charles Cope* do also pay a fine of ten dollars, and that the said *John Y. Noel* and *Charles Cope* do stand committed until the said fine be paid.

> *Charlton*, Att'y Gen. in support of the rule for the attachment.
>
> *Noel*, against it.